Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1420 | **DATE** | 10/24/2000 |
| **CASE TITLE** | JANE E. ROSS vs. MATTHEWS EMPLOYMENT, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion for summary judgment [16-1] is granted. Judgment is entered for defendants Matthews Employment, AccuStaff, Inc. and Randstad North American, L.P. and against plaintiff Jane Ross. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 27 2000 date docketed | 25 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 OCT 26 PM 5: 58 | 10/24/2000 date mailed notice | |
| SB | courtroom deputy's initials | | jad mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE E. ROSS, | ) |
| | ) |
| Plaintiff, | ) No. 00 C 1420 |
| | ) |
| v. | ) Suzanne B. Conlon, Judge |
| | ) |
| MATTHEWS EMPLOYMENT, an AccuStaff, Inc. | ) |
| company, ACCUSTAFF, INC., and RANDSTAD | ) |
| NORTH AMERICA, L.P. | ) |
| | ) |
| Defendants. | ) |

**DOCKETED**

**OCT 27 2000**

## MEMORANDUM OPINION AND ORDER

Jane Ross sues Matthews Employment, AccuStaff, Inc. ("AccuStaff"), and Randstad North American, L.P. ("Randstad") (collectively "defendants") for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq. Ross claims defendants perceived her as disabled, failed to give her reasonable accommodation for the perceived disability, and constructively discharged her. Ross also claims she was discriminated against due to her age. Defendants move for summary judgment on all claims pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

## BACKGROUND

The court views the record and draws all reasonable inferences in the light most favorable to the non-moving party. Fed.R.Civ.P. 56(c); Hill v. Am. Gen. Fin., Inc., 218 F.3d 639, 642 (7th Cir. 2000).



I        **The parties**

Matthews Employment is a staffing company that provides temporary and permanent workers for client companies. Defendants' Statement of Undisputed Facts ("Def. Facts"), ¶ 2. It employs consultants who develop relationships with client companies and employment candidates for the purpose of placing candidates with companies for a fee. Id. at ¶ 5. The client consultants work at local branch offices under the direct supervision of either the manager of temporary consultants or the manager of permanent consultants. Id.

In 1995, AccuStaff purchased Matthews Employment. Id. at ¶ 3. In October 1998, Randstad purchased assets and stock owned by AccuStaff, including Matthews Employment stock. Id. at ¶ 4.

Ross was hired by Matthews Employment as a permanent consultant on September 15, 1981. Id. at ¶ 6. His job duties consisted primarily of interviewing, screening and placing candidates in full-time positions with client companies. Id. In 1984, Matthews Employment opened a branch office in Libertyville, Illinois. Id. Ross was promoted to permanent and site manager of the Libertyville branch. Id. In this position, Ross supervised the permanent consultants who worked at the branch and had general management authority over the branch office facility. Id. Ross remained in this position until she left the company in June 1998. Id.

II       **Ross' disability**

On June 20, 1997, Ross was diagnosed with breast cancer. Plaintiff's Answer to Defendants' Statement of Undisputed Facts ("Pl. Facts"), ¶ 9. Charles Matthews, who owned Matthews Employment and was Ross' ultimate boss, sent a letter to the company's human resources manager informing her of the diagnosis. Id. Ross then completed paperwork required under the Family and Medical Leave Act ("FMLA") and took leave under the FMLA; Ross used her previously scheduled

2

vacation leave. Id. During this leave and throughout her cancer treatment, Ross continued to work as permanent and site manager and continued to receive full salary and benefits. Def. Facts, ¶10.

**III     Request for job-sharing**

In April 1998, Judie Pachay and Patti Oftendahl, two temporary placement consultants in Matthews Employment's Libertyville branch office, approached Sue Dixon, who replaced Charles Matthews as president in the spring of 1997, and requested a job-share work arrangement. Id. at ¶ 12. Dixon approved their request in late May or June 1998, and each was allowed to work three days a week. Id. at ¶ 15.

In May 1998, Ross and Kathy Hoffman, both permanent placement consultants, requested a job-share arrangement from Dixon. Id. at ¶ 16. Ross offered to resign from her full-time position and to work part-time with Hoffman. Id. at ¶ 17. There is a dispute about the origin and timing of the job-sharing proposal. In an affidavit, Ross asserts Dixon originally suggested the arrangement to her in April, prior to Pachay and Oftendahl's job-sharing arrangement. Pl. Facts, Ex. D, ¶ 18.[1] According to defendants, Dixon did not initially propose the job-sharing arrangement to Ross. Instead, Ross and Hoffman posed the idea of a job-sharing arrangement to Dixon, only after Pachay and Oftendahl had secured a job-sharing arrangement. Def. Facts, Ex. E, 67. This conflict does not appear to be material because it is clear Ross and Hoffman did not actually request permission from Dixon to enter the job-sharing arrangement until May 1998, after Pachay and Oftendahl had already received permission to enter their job-sharing arrangement. Pl. Facts, ¶ 16.

---

[1] Ross' affidavit is unsworn and not notarized in violation of Fed. R. Civ. P. 56(e). Affidavit testimony must be sworn or made under the penalty of perjury. Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985).

3

In June 1998, Dixon denied the job-share request. Id. at ¶ 25. She based this decision on a determination that the size of the office would not permit additional employees working on a part-time basis. Id. at ¶ 18-19. If Ross and Hoffman were permitted to job-share, 30% of the Libertyville branch office would work part-time on a job-sharing basis. Id. at ¶ 19. Further, Dixon thought the permanent consultant position required full-time work, but temporary consultants did not necessarily have to work full-time. Id. at ¶ 20-21. Permanent consultants work more closely with clients and develop long-term business relationships with them. Id. at ¶ 21. Working with two different permanent consultants would not be feasible for a job candidate. Id. at ¶ 23.

On June 2, 1998, Ross submitted her resignation, stating "[i]t has been a pleasure working with the people at Matthews Employment these past seventeen years. I wish everyone continued growth and prosperity." Id., Ex. D at Ex. 6. Ross sent two additional letters to Matthews Employment. Neither letter asserted any claim of age or disability discrimination. Def. Facts, Ex. D at Ex. 7-8; Pl. Facts, ¶ 28-29. The second letter stated Ross resigned because her requested job-sharing arrangement was denied. Def. Facts, Ross Dep, Ex. D at Ex. 8; Pl. Facts, ¶ 29.

## DISCUSSION

I **Legal standard**

A movant is entitled to summary judgment when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the record and draw all reasonable inferences in the light most favorable to the nonmoving party. Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 291 (7th Cir. 1998). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there

is a genuine issue for trial. Fed. R. Civ. P.56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility dominate. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). However, "there is no separate rule of civil procedure in employment cases;" rather, the added rigor language means only that "courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable." Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir. 1997). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit will preclude an entry of judgment for the moving party. Thomas & Betts, 138 F.3d at 291.

## II    ADEA claims and ADA harassment claim

In her response brief, Ross does not address defendants' argument that her ADEA claims and ADA harassment claim are untimely and meritless. A plaintiff has a minimal responsibility to identify the applicable law and argue why the facts fit into the parameters of that law. Reidt v. County of Trempeleau, 975 F.2d 1336, 1341 (7th Cir. 1992). It is not the court's role to fashion an argument for the plaintiff. Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, 957 F.2d 302, 305 (7th Cir. 1992). Ross has not produced any evidence to support her ADEA claims or

her ADA harassment claim in response to defendants' summary judgment motion. As a result, judgment must be entered for defendants on these claims.

## III    ADA discrimination claim

Ross does not provide evidence she is disabled. Instead, her brief asserts defendants perceived her as disabled within the meaning of § 12101(2)(A) of the ADA. Defendants argue this claim of disability discrimination based on a perceived disability is untimely and without merit.

### A    Untimeliness

As a prerequisite to asserting a claim under the ADA, Ross must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. Delaware State Coll. v. Ricks, 449 U.S. 250, 256 (1980). The acts complained of in the charge must take place within 300 days of the filing of the charge. 42 U.S.C. § 2217(a); EEOC v. CNA Ins. Co., 96 F.3d 1039, 1042 (7th Cir. 1996).

Ross filed her EEOC charge on November 19, 1998. Pl. Facts, Ex. A. Therefore, any actions that occurred prior to January 22, 1998, 300 days before Ross filed her charge, are time-barred. Ross bases her allegations of disability discrimination solely on the actions of Charles Matthews. However, in her deposition, Ross stated she has not had any contact with Matthews since October 30, 1997. Def. Facts, Ex. D, p. 138. Ross does not produce evidence of any discriminatory acts by Matthews after January 22, 1998. Thus, plaintiffs claims of discrimination based on a perceived disability are time-barred.

### B    Merits

Even if Ross' disability discrimination claim were not time-barred, the claim is without merit. Ross bears the burden of establishing a *prima facie* case by showing: (1) she is disabled within the meaning of the ADA; (2) her work performance met defendants' legitimate expectations; (3) an

6

adverse employment action was taken; and (4) the circumstances surrounding the adverse employment action indicate it is more likely than not her disability was the reason for the adverse action. Leffel v. Valley Fin. Serv., 113 F.3d 787, 794 (7th Cir. 1997). Ross fails to even address the second and fourth prongs of the *prima facie* case. Because she has not produced evidence sufficient to establish a *prima facie* case, defendants' motion for summary judgment on the disability discrimination claim must be granted.

Even if Ross had produced evidence to support the second and fourth elements of the *prima facie* case, she has failed to produce sufficient evidence showing defendants perceived her as disabled under the ADA. To prevail on her claim, Ross must establish defendants regarded her as having an impairment that substantially limits one or more of her major life activities. Honson v. Am. Chamber of Commerce, 108 F.3d 818, 820 (7th Cir. 1997). Ross fails to identify any major life activity that defendants purportedly regarded as substantially limited by her cancer. An inference may be drawn that Ross premises her claim on the major life activity of working. However, Ross must produce facts raising an inference that defendants perceived her cancer as disqualifying her from a broad range of jobs in various classes. Sinkler v. Midwest Prop. Mgmt., L.P., 209 F.3d 678, 686 (7th Cir. 2000). Ross does not meet this burden. Defendants promoted Ross to a manager at the Libertyville branch, where she supervised permanent consultants who worked at the branch and had general management authority over the branch office. When Ross offered to resign her position and work part-time, defendants refused, instead asking her to remain and perform her current duties, which entailed more responsibility than those of the position she requested. It is clear defendants regarded Ross as qualified to perform her job duties. The only evidence to the contrary is Ross' affidavit stating Charles Matthews told her it was good she was not president because she had cancer. Pl. Facts Ex.

D. Taking this statement as true, it only establishes defendants did not believe Ross could perform the president's job. This falls far short of Ross' burden of proving defendants perceived Ross as incapable of performing a broad range of jobs in various classes.

Even if Ross had established she was perceived as having a disability, she has failed to demonstrate she suffered an adverse employment action. Ross advances three forms of adverse employment action: (1) denial of reasonable accommodation; (2) denial of a job-sharing arrangement; and (3) constructive discharge.

Ross raises the denial of a reasonable accommodation for the first time in her response to defendants' motion for summary judgment. This issue was not raised in Ross' complaint. Ross may not amend her complaint by arguments made in a brief in opposition to a summary judgment motion. Insolia v. Phillip Morris, Inc., 216 F.3d 596, 606 (7th Cir. 2000). This court must disregard Ross' arguments regarding reasonable accommodation. Further, there is no merit to Ross' argument. Non-disabled employees perceived as disabled by their employers are not entitled to reasonable accommodations under the ADA. Weber v. Strippit, Inc., 186 F.3d 907, 917 (8th Cir. 1999). In addition, Ross cites no evidence to show she ever indicated to defendants she needed the job-share because of her medical condition.

Ross also argues the denial of a job-sharing arrangement was an adverse employment action. An adverse employment action is defined as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse

action." Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). Ross cites no case law to support her argument that the denial of a job-sharing arrangement is an adverse employment action. Further, she cites no evidence to show any change in salary, title, benefits, seniority or responsibilities as a result of the denial. In contrast, the evidence shows Ross retained her management position at the same salary and benefits. In sum, Ross has failed to provide any evidence of the sort of adverse impact required to establish an adverse employment action. See, e.g., Smart, 89 F.3d at 4442 (poor performance evaluations not enough to constitute adverse employment action); Crady v. Liberty Nat'l Bank and Trust Co. of Ind., 993 F.2d 132 (7th Cir. 1993) (change in title from assistant vice-president and manager of one bank to loan officer position at different bank not adverse employment action); Spring v. Sheboygan Area School Dist., 865 F.2d 883 (7th Cir. 1989) (choice between retirement and transfer to a different school not adverse employment action).

Finally, Ross argues she was constructively discharged. To establish this claim, Ross must demonstrate her "working conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation." Tutman v. WBBM-TV, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000). Ross has failed to meet this burden. Ross produces no evidence to show the conditions of her employment were so intolerable she was forced to resign. To the contrary, the letters Ross submitted when she resigned, stating it has been a pleasure working with Matthews Employment and wishing her former colleagues well, indicate her departure was amicable. Ross' claim of constructive discharge is without any support in the record.

In sum, Ross has failed to produce evidence sufficient to satisfy any of the prongs of a *prima facie* ADA discrimination case.[2] Defendants are entitled to judgment on her disability discrimination claim.

## CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of defendants Matthews Employment, AccuStaff, and Randstad and against plaintiff Jane Ross.

ENTER:

Suzanne B. Conlon
United States District Judge

October 24, 2000

---

[2] In addition to failing to meet the *prima facie* case, Ross fails to rebut defendants' proffered reasons for the denial of a job-share arrangement as pretextual. Leffel, 113 F.3d at 792. Indeed, her response brief does not even address defendants' argument that they had legitimate business reasons for the denial.

10